BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com

Hearing Date: September 17, 2013 at 10:00 a.m.
Objection Deadline: September 10, 2013

*Attorneys for Irving H. Picard, Esq., Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC
and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>MAXAM ABSOLUTE RETURN FUND, L.P.; MAXAM ABSOLUTE RETURN FUND, LTD.; MAXAM CAPITAL MANAGEMENT LLC; MAXAM CAPITAL GP LLC; SANDRA L. MANZKE REVOCABLE TRUST; SANDRA L. MANZKE, as trustee and individually; SUZANNE HAMMOND; WALKER MANZKE; and APRIL BUKOFSER MANZKE;<br><br>Defendants. | Adv. Pro. No. 10-05342 (BRL) |

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002 AND 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
A SETTLEMENT AGREEMENT BY AND BETWEEN
THE TRUSTEE AND MAXAM ABSOLUTE RETURN FUND, L.P.; MAXAM
ABSOLUTE RETURN FUND, LTD.; MAXAM CAPITAL MANAGEMENT LLC;
MAXAM CAPITAL GP LLC; SANDRA L. MANZKE REVOCABLE TRUST;
SANDRA L. MANZKE; SUZANNE HAMMOND; WALKER MANZKE;
<u>AND APRIL BUKOFSER MANZKE</u>**

TO:   THE HONORABLE BURTON R. LIFLAND
        UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff," and together with BLMIS, collectively, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order (the "Approval Order"), pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement, the terms and conditions of which are set forth in the settlement agreement (the "Agreement")[1] by and among the Trustee on the one hand, and MAXAM Absolute Return Fund, L.P. ("MARF LP"), MAXAM Absolute Return Fund, Ltd. ("MARF Ltd."), MAXAM Capital Management LLC ("MAXAM Capital"), MAXAM Capital GP LLC ("MAXAM GP"), Sandra L. Manzke Revocable Trust ("Manzke Trust"), Sandra L. Manzke ("Manzke"), Suzanne Hammond ("Hammond"), Walker Manzke ("Walker"), and April Bukofser Manzke ("April") (collectively the "MAXAM Defendants"), on the other hand. In support of the Motion, the Trustee respectfully represents:

---

[1] The form of Agreement is attached hereto as Exhibit "A."

2

## PRELIMINARY STATEMENT

1. The Trustee's settlement with the MAXAM Defendants results in a $97.8 million settlement payment to the Trustee and represents a recovery of 100% of the MAXAM Defendants' withdrawals from BLMIS at issue in this Adversary Proceeding.

2. This settlement represents a good faith, complete, and total settlement between the Trustee and the MAXAM Defendants as to any and all disputes between them raised in this Adversary Proceeding and the direct customer claim submitted by MARF LP for BLMIS Account 1M0232, including, but not limited to, claims the Trustee had against the MAXAM Defendants for the avoidance and recovery of transfers to them by BLMIS. The settlement will benefit the customers of BLMIS holding allowed claims, as well as the indirect investors who invested with the MAXAM Defendants, and the Trustee respectfully requests that the Court approve it.

## BACKGROUND

3. On December 11, 2008 (the "Filing Date"),[2] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through investment advisor activities of BLMIS.

4. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor

---

[2] In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA.

3

Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

5. On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i) removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

(ii) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii) removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

6. At a plea hearing on March 12, 2009 (the "Plea Hearing") in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

7. On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE CLAIMS AGAINST THE MAXAM DEFENDANTS

8. On December 8, 2010, the Trustee filed a complaint commencing this Adversary Proceeding against the MAXAM Defendants, seeking the avoidance and recovery of transfers totaling $97.8 million made to MARF LP from BLMIS, as well as the recovery of subsequent transfers allegedly made from MARF LP to the remaining MAXAM Defendants.

9. Defendant MARF LP is a Delaware limited partnership, with its principal place of business in Darien, Connecticut, whose sole purpose was to invest in a BLMIS account opened in July 2006. Defendant MAXAM GP is MARF LP's general partner. Defendant MARF Ltd. is a Cayman Islands limited liability company and a limited partner in MARF LP. Defendant MAXAM Capital, a Delaware limited liability company with its principal place of business located in Darien, Connecticut, was the investment manager for MARF LP and MARF Ltd. Defendant Manzke founded MAXAM Capital in 2005 and served as its Chairman and CEO. Defendant Manzke Trust was created by and for the benefit of Manzke and is a limited partner in MARF LP.

10. The Trustee alleged that MARF LP received direct transfers from BLMIS totaling $97.8 million, all of which occurred within the two years prior to the Filing Date, including $25 million during the 90-day period prior to the Filing Date. In addition, the Trustee has alleged that the remaining MAXAM Defendants received subsequent transfers from MARF LP.

11. The Trustee's claims against the MAXAM Defendants include, among other relief sought, to (a) avoid and recover initial transfers made by BLMIS within the applicable statutory period (the "Transfers") under Sections 547, 548, 550 and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3); (b) recover subsequent transfers made under Sections 548, 550(a) and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3); (c) disallow the MARF LP customer claim against the BLMIS estate pursuant to Section 502(d) of the Bankruptcy Code; and (d) equitably subordinate MARF LP's customer claim against the BLMIS estate pursuant to Section 510(c) of the Bankruptcy Code (collectively, the "Trustee's Claims").

12. The MAXAM Defendants dispute any liability to the BLMIS estate under all counts alleged in the complaint.

5

13. The Trustee also named Manzke as an individual defendant in another adversary proceeding, *Picard v. Tremont Group Holdings, et al.*, Adv. Pro. No. 10-05310 (the "Tremont Adversary Proceeding"), based on her role as a principal at Tremont Group Holdings and/or its affiliates prior to the formation of MAXAM Capital in 2005. In the Tremont Adversary Proceeding, the Trustee has settled with and dismissed all defendants other than Manzke. Manzke has disputed any liability to the BLMIS estate under all counts alleged in the Tremont Adversary Proceeding.

### MARF LP's CUSTOMER CLAIM

14. Prior to July 2, 2009, the bar date for filing customer claims, MARF LP filed a customer claim with the Trustee; assigned claim number 004554 (the "Customer Claim"); and asserting losses based on account number 1M0232 in the aggregate amount of Two Hundred Fifteen Million Two Hundred Eighty-Seven Million Dollars ($215,287,000.00). The Customer Claim amount reflects the difference between amounts deposited into BLMIS and the amounts withdrawn by MARF LP in account number 1M0232, which is consistent with the Trustee's "net equity" calculation of customer claims previously affirmed by this Court. A copy of the Customer Claim is attached as Exhibit "B."[3]

### SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

15. During the past several years, the MAXAM Defendants and the Trustee, through their respective counsel, have engaged in multiple good faith discussions aimed at resolving the Trustee's claims and the amount, if any, of MARF LP's customer claim. Those discussions intensified over the past six months, resulting in an amicable resolution.

---

[3] Due to the voluminous nature of the schedules and attachments to the customer claim number 004554, those documents are not being filed herewith and are not included within Exhibit "B."

6

16. Prior to and during settlement negotiations—which included a period of active discovery in the Adversary Proceeding—the Trustee conducted a comprehensive investigation of the MAXAM Defendants' investments with BLMIS, and the MAXAM Defendants' role in the overall BLMIS scheme. The Trustee has received extensive document productions and written discovery, conducted depositions, and served non-party subpoenas in the Adversary Proceeding. The Trustee also conducted a thorough investigation prior to the filing of the Adversary Proceeding, which included the substantial review of account statements, transactional histories, correspondence, and other records available to the Trustee, as well as conducting Bankruptcy Rule 2004 examinations. As a result, the Trustee has reviewed extensive information from both the MAXAM Defendants and non-party sources concerning MARF LP's investments with BLMIS and the other MAXAM Defendants' involvement with MARF LP and BLMIS.

17. After a review of the relevant information and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to amicably resolve this matter, rather than continue with litigation.

## OVERVIEW OF THE AGREEMENT

18. The principal terms and conditions of the Agreement are generally as follows:[4]

- The MAXAM Defendants shall cause to pay to the Trustee for the benefit of the Fund of Customer Property $98,700,000.00 from the SIPC Advance and catch-up distributions from the First and Second Interim Distributions

---

[4] Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

7

- owed to MARF LP based on its allowed claim as part of the settlement. This amount represents all transfers received by MARF LP from BLMIS.

- MARF LP shall have an allowed customer claim in the SIPA Proceeding in the amount of Two Hundred Seventy-Six Million Six Hundred Eighty-Seven Thousand Dollars ($276,687,000.00), which shall be entitled to a SIPC customer advance under SIPA § 78fff-3(a). The allowed claim is comprised of MARF LP's Net Equity Claim of $215,287,000.00, plus an increase of $61,400,000.00 under Section 502(h) of the Bankruptcy Code.

- Manzke Trust will waive 50% of its right to any distribution by MARF LP based on funds received as a result of MARF LP's allowed claim.

- The Trustee will release, acquit, and absolutely discharge the MAXAM Defendants on the specific terms set forth in the Agreement.

- The MAXAM Defendants will release, acquit, and absolutely discharge the Trustee and all his agents and BLMIS and its consolidated estate on the specific terms set forth in the Agreement.

- The Trustee shall submit to the Bankruptcy Court a stipulation or motion requesting the dismissal of this Adversary Proceeding, with prejudice, as against the MAXAM Defendants.

- The Trustee shall submit to the Bankruptcy Court a stipulation or motion requesting the dismissal of the Tremont Adversary Proceeding, as against Manzke.

**RELIEF REQUESTED**

19. By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached hereto as Exhibit "C" approving the Agreement.

**LEGAL BASIS**

20. Bankruptcy Rule 9019(a) states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

21. The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

9

22. In deciding whether a compromise falls within the "range of reasonableness," courts consider the following factors:

   (i) the probability of success in the litigation;

   (ii) the difficulties associated with collection;

   (iii) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

   (iv) the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993)).

23. The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

24. The Trustee believes that the terms of the Agreement fall well above the lowest point in the range of reasonableness. The Agreement resolves all claims among the Parties and avoids the cost and delay of what could otherwise be lengthy and contentious litigation. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit")). A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "D").

25. The Agreement greatly furthers the interests of BLMIS customers by adding $97.8 million to the Fund of Customer Property, and results in the Trustee recovering 100% of

the withdrawals made by MARF LP from BLMIS—all made within two years prior to the Filing Date—without the delay, expense and uncertainty of recovery through further litigation. In addition, under the Agreement, Manzke Trust will give up one-half of its interest in distributions made by MARF LP to its limited partners.

## CONCLUSION

26.    In sum, the Trustee submits that the Agreement should be approved: (a) to avoid any further litigation that may be lengthy, burdensome, and expensive; and, (b) because it represents a fair and reasonable compromise of the Trustee's Claims that greatly benefits the estate and the customers of BLMIS. Because the Agreement is well within the "range of reasonableness" and confers a substantial benefit on the estate, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

27.    In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) James N. Lawlor, Esq., Wollmuth Maher & Deutsch LLP, One Gateway Center, Newark, New Jersey 07102; and (vi) Jonathan D. Cogan, Esq., Kobre & Kim LLP, 800 Third Avenue, New York, New York 10022. Notice of this Motion also will be provided via email and/or U.S. Mail to all persons who have filed notices of appearance in the BLMIS proceeding and to all defendants in this Adversary Proceeding pursuant to the Order Establishing Notice Procedures (ECF No. 4560). The Trustee submits that no other or further notice is required.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "C" granting the relief requested in the Motion.

Dated:  New York, New York
        August 26, 2013

Of Counsel:

Dean D. Hunt
Email: dhunt@bakerlaw.com
Marie L. Carlisle
Email: mcarlisle@bakerlaw.com
Baker & Hostetler LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Telephone: (713) 751-1600
Facsimile:  (713) 751-1717

Respectfully submitted,

/s/ David J. Sheehan
David J. Sheehan
Email: dsheehan@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Thomas L. Long
Email: tlong@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard,*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC and the*
*Estate of Bernard L. Madoff*